And our second case is United States v. Annamalai. And we have Ms. Webster and Mr. Quinn. Ms. Webster, are you ready to proceed? I am, Your Honor. Thank you. Good morning and may it please the Court. My name is Leanne Webster and I'm representing Mr. Annamalai in this appeal. This Court should hold that it has jurisdiction over this appeal because Hyde Amendment proceedings are ancillary civil proceedings such that the order denying Mr. Annamalai's motion is a final order. Alternatively, it should hold that the order is appealable under the collateral order doctrine. Whether a case is civil or criminal is determined by the nature of the proceeding. If it determines guilt or innocence or punishment, it's criminal. But where the proceeding seeks to redress prior injuries, it is civil. Here, the Hyde Amendment motion did not address Mr. Annamalai's guilt or innocence and instead it sought relief from the private injuries that he suffered due to the government's prosecution of him, specifically the attorneys' fees that he paid to defend himself. Ms. Webster, it seems to me that your biggest challenge on this jurisdictional issue is getting around the phrase in the text of the Hyde Amendment, in any criminal case. So doesn't that phrase foreclosure argument that this is a separate civil action? I don't believe so, Your Honor. I think that that phrase just distinguishes the fact that the Hyde Amendment motion is appropriate for attorneys' fees that came out of or that were necessary because they were used to defend someone in a criminal case. And so, you know, there are a number of other circuits that have addressed the issue and they have also rejected that argument that just because it comes out of a criminal case that the motion has to be criminal. The Fourth Circuit, the Fifth Circuit, the Ninth Circuit, the D.C. Circuit, they have all rejected that argument. The only circuit to have concluded otherwise is the Tenth Circuit and in the case Robbins. And even the Tenth Circuit has revisited that holding and noted that that holding was conclusory and it was an outlier because it did not examine the nature of the relief sought. And that's in Injury Special Grand Jury 89-2. Is this related to the time limits for filing and not to the question that we have before us? Well, I think the time limits for filing are dependent on whether it's civil or criminal. So all of the cases that address the time limits have to first address whether it's civil or it's criminal. If it's civil, then the civil time frame applies under the Federal Rule of Appellate Procedure 4A. If it's criminal, then the time limit under 4B applies. And so the fact that they found that the time limit from 4A applies necessarily means that they held that it was a civil, an ancillary civil proceeding. And I think the cases say that explicitly. Specifically, I think we laid this out more in our reply brief, but the cases, specifically the Fourth Amendment and Holland, very clearly said we are addressing whether this is a civil or criminal proceeding, and we find that it is civil. And basically every case, every circuit to have addressed that issue has held the same, as I said, with the exception of the Robbins decision, but that the Tenth Circuit has also rejected that decision or noted that it was conclusory and an outlier and probably incorrect. What should we make of the fact that your client's Hyde Amendment motion was made in the criminal case and appears on the criminal docket? I think that's a common thing that happens when you have ancillary civil proceedings. So we have, it is not uncommon for you to have a criminal case and then have ancillary civil proceedings as part of it. And so two examples that I can give are specifically the forfeiture argument or issue, like those are civil proceedings, they are filed in the criminal case. And I think this court, and I believe it's Martinez, has held that a motion for return of property under Rule 41G, I believe, is also civil. And so those are ancillary civil proceedings. And that's what this is as well, because when we look to the nature of it, it's civil. We're asking for attorney's fees. He's not asking the court to determine his guilt or innocence. It is all about a civil redressing the harm that he suffered by having to pay for an attorney to defend him against these charges. You don't have any cases where someone requested Hyde Amendment attorney's fees prior to sentencing, correct? No, I will acknowledge that we are in a unique procedural posture. And so in almost every case, you have to wait until the party prevails, right? And so he prevailed on appeal, or we prevailed on appeal. And so he was required to file a motion within 30 days. And so that's what he did. He resentencing is still pending, I don't think changes the analysis. I think, as I said, I think it's a unique procedural posture. But I don't think that it changes the analysis, because it is a civil case, or an ancillary civil proceeding. But alternatively, I think we're in the it would qualify under the collateral order doctrine. But I think the when thinking about what the court is, what the court will be doing in terms of future litigants, I think it's important to who are it would be clearer and provide better guidance for for future parties to establish a bright line rule that Hyde Amendment motions are ancillary civil proceedings that are separate and distinct from the underlying criminal proceedings. Because if the court holds that this is not that there's no jurisdiction, it creates a whole host of procedural problems, or confusion about what's next. So what happens if Mr. Anomaly were to be sentenced to time served, he's going to be sentenced in two weeks. So if he's sentenced to time served, perhaps, then and he doesn't want to appeal, there's nothing left to appeal. Does he would he then have to file a notice of appeal to challenge this order that was filed, you know, years ago at this if he hadn't, if he hadn't filed a notice within 30 days, do you think he would have lost his shot? I think potentially, because generally, and I know that generally, their case is holding that when you appeal the sentence, the judgment and conviction order, when you file the notice of appeal that brings up prior orders. But in those cases, the prior orders are related to the counts that he's been sentenced on. And so here, he's not going to be sentenced on any of the counts that are related to this Hyde Amendment motion, because those counts have been vacated, and he can't be sentenced on those. So I think if he had waited, there's a good chance that the government could have argued that he that there was no jurisdiction, he should have appealed it sooner, because those counts aren't what aren't at issue in the judgment and convict and commitment order. So that's what Grant said, on that point, it is an interesting point, because the Hyde Amendment says that the motion must be filed within 30 days after entry of a judgment that is final and unappealable. As I see it, the judgment that is final and unappealable is our mandate that indicated these counts should be reversed. There's nothing left for Judge Batten to do, we've reversed it. I guess there's a ministerial act where someday he could write something in a judgment that acknowledges that. But that so your point is well taken, had he not filed a motion within 30 days of the issuance of our mandate, your his concern might have been the government would have come back and said he's too late. And so if he does properly file that motion, then the question is, what do we do when a judge like Judge Batten acts promptly, he could have delayed it, he could have stayed it, he could have waited till sentencing, we had COVID, we had your client that calls like 100 motions. And so the sentencing was delayed, but he didn't. And so our challenge here is if this was properly filed, not prematurely filed, then what do we do when the judge actually rules on something that was properly filed? Yes, Your Honor, I think all of that is is correct. And I think that that it's as you said, like there's nothing for Judge Batten left to do on this motion. And nothing that he will do in terms of imposing sentence on the 24th has anything to do with this. And so that's why it makes sense. And it keeps it I think cleaner to allow a separate appeal from this from the this order, as opposed to making him appeal this as part of as a part of a potential appeal that we don't even necessarily know is coming from the judgment and conviction order. There'll be some kind of appeal knowing your client, but well, I tend to agree with you, but I'm thinking about potential clients in the future. But but yes, I think you will probably see an interesting posture because in August 23, Judge Batten will sentence your client again. And I thought initially, initial glance, well, you know, we have a final, final judgment then. But the problem is, we have a final judgment then. But nothing's going to have anything to do with this. So your client will appeal that and then I guess your client's position would be, you know, I still don't want this 11th Circuit to wait for that to happen. That can take a little while I want you to go ahead and deal with my motion now. Is that his position? That is definitely our position, Your Honor. So I see my time is up. So thank you. Thank you. Mr. Quim. Judge Branshaw may have pleased the court. Michael Quim for the United States. The plain text of the Hyde Amendment forecloses Mr. Animali's argument that his proceeding arises out of a separate civil action. The Hyde Amendment. That's not Mr. Quim, you've got four other circuits that don't seem to agree with you on that. I don't think the textual analysis in any of those decisions were persuasive. I think the only one who actually looked at the text carefully would have been the Holland decision and they just did it wrong. If you read the textual analysis from the Holland decision, they state the text, they state what they think it means, and then they say, that said, et cetera, et cetera, and then they say something slightly different. I think Judge Mott's concurrence in the judgment in Holland is far more persuasive. She said that looking at the text of in any criminal case, the firm limitation that Congress imposed on where this motion should be brought, she would have ruled that it's part of the criminal case and should have been appealed at the same time. And she said, there's also a lot of practical considerations that support that decision. So to the extent the other circuits even looked at the text, I think they did so unpersuasively. And of most of those decisions simply didn't address the text in any meaningful manner. The position of the phrase in any criminal case modifies the verb in the sentence, which is it doesn't modify the attorney's fees that are to be awarded or the criminal defendant or the position of the United States. It modifies the context in which the court may award attorney's fees. And that context is the criminal case. Therefore a high demand motion is part of the criminal case. As to this guilt or innocence argument, the analogies are not persuasive. I can, for example, cite the example of compassionate release. That has nothing to do with guilt or innocence, but an appeal from a denial of emotion or compassionate release has to be filed within 14 days. There's just not too many good analogies on this point, which is why I think turning to the plain text to what Congress intended and what Congress said is the right way to answer this question. Well, I think Congress probably, they were thinking about an all-out acquittal. Somebody's gotten railroaded. They're outright acquitted. We're done. As your opposing counsel said, this is a very unusual kind of scenario and maybe it's typical. I've checked and I don't think we have any convictions reversed totally in the Northern District for a while where it's total. So you're going to have some counts reversed and some not reversed. And so I don't know that Congress considered that and that's why we're in a bit of the problem that we're in right now. Fair enough, Your Honor. I would say if this situation recurs more and more often, our position actually provides the better guidance because what the decision on it is challengeable and appealable only when the judgment is imposed. And that's very clean and neat and lets everyone know what they need to do. You can file a motion. What's the problem? Let's say as a practical matter, it's done. Those counts are gone. Bankruptcy counts are gone. Nothing Judge Batten can do to resurrect those. And you can understand a client arguing, look, you've ruined me. I've spent hundreds of thousands of dollars on a lawyer. Let's say it's a case we're going to retry him now, not just sentence him. I've got trial coming up. I've got to wait now five years to get the attorney's fees. I desperately need for no reason other than this ministerial notion that Judge Batten has to sign something at the end when there's absolutely nothing he can do to alter that. How do you address the practical problems that this creates? It's nice and neat to have one judgment we look at at one time, but the practical problems that increase for somebody who truly has a good claim that the government acted wrongly for them as to the vacated counts of conviction. I would say there's practical considerations on both sides. Your Honor has identified the concern for the defendant's side. But on our side, the Supreme Court has said that we don't want to allow piecemeal appeals because it allows people to clog up the courts and harass litigants. And with all due respect, that's been Mr. Amalai's strategy throughout this entire. Your Honor, how does it hurt you to handle this appeal and then later on handle his sentencing appeal? What's the problem in that? It's a waste of the government's resources and a waste of the court's resources to hear two appeals when one would do. And under their position, there's no limits to the number of appeals that might come up. I'm glad, Judge Carnes, you brought up the concept of retrial. That could absolutely happen. Here, there's only 10 counts. And then this court had dismissed one count and remanded nine for retrial. The defendant could then file a height amendment motion about that count, get that denied, and then file an immediate appeal under their position. And then suppose the district court granted acquittal on one of the remaining counts. There's a second height amendment motion, a second appeal. And then suppose the jury acquitted on one count and convicted on the rest. Third height amendment motion, third appeal. This is a bunch of appeals that can all be heard at the same time instead of three different panels to hear it. And having the government write three responsive briefs, it's far cleaner to just do it one time at the end. And this whole argument also illustrates the problem with their legal analysis on the merits, which is that count-by-count analysis is not allowed. This court said in Chagin that we need to look at the position of the United States as a whole. And so while the government is happy to have the defendant file whatever they want within the 30-day time limit, the appealability issue should wait until the proceeding has concluded and the position of the United States can be reviewed as a whole. Would it have been your position, and I guess I'm asking you a difficult question, but perhaps could it have been your position if a defendant anticipating that you wouldn't want piecemeal litigation doesn't file his height amendment motion 30 days after the issuance of our mandate? He waits. He waits until Judge Battin sentences him and he's got one judgment and he files it. I'm sure he might be a little nervous that somebody, not you, might come back and say, hey, you're too late. That's a possible argument the government can make, is it not? Yes, I think that's possible under the text. But that's why our position is they can file whenever they need, but this court should only have to address one appeal after everything's been decided. Is it your position then that he should, he actually was required to file them 30 days with the issuance of our mandate? Is that your position? Your Honor, I've not actually studied the question. I'm not familiar with the 30-day time limit. But if there was one that he was required to go by, then he could have done that. And that doesn't impact the appealability issue. So the upshot of their rule is that there could be a series of height amendment appeals that require the government to respond and require this court to hear the same case multiple times. And the Supreme Court has said that we don't want to do that in criminal cases. We want to minimize appellate court interference, and we want to consolidate in one review whatever is possible to be reviewed. And here, there's just no harm to Mr. Annalai for him to wait until sentencing is imposed in a couple of weeks to then appeal everything together. And the questions in the reply brief have easy answers. No, he would not need to file another notice of appeal. An earlier filed notice of appeal becomes effective whenever the order underlying it becomes effective. And no, he would not have to redo the briefing. The briefing is already done here, and he could just incorporate that for whatever new panel is assigned to hear the consolidated appeal. So I don't think any absurd consequences occur because of the government's position. By contrast, I don't think Congress in any way meant for the defendant to be able to file one after another height amendment motions and then take those immediately up to the Court of Appeals. Maybe not absurd, but isn't that pretty complicated? If you're saying it sounds like he does need to file a motion within 30 days, and then the district court, understandably, doesn't want motions sitting around on its six-month calendar and so forth, so the district court rules on that. Then you're saying, obviously, he would need to, I think, go ahead and appeal that here. And so every time, are we going to have to say, no, we don't have jurisdiction over this case, you need to wait? It's one thing to deal with it in this case because we're answering the question for the first time, but I have a hard time how we would say going forward that that's the way the procedure should go. He would have all those required filing deadlines, but then we would have to each time say, no, you don't have jurisdiction, wait until the final judgment of everything for the district court. I've not seen the difficulty in your question, to be honest. I think that is exactly what would happen. So he should each time brief a case here, and then a panel of this court presented with a briefing about a high amendment appeal should say, well, setting all that aside, it's too early, so we're just going to hold this case in abeyance until the true final judgment from below. No, I apologize. I guess I misunderstood. What we're saying is they need to file no appeals until the final judgment is entered and sentence has been imposed. If they do file any introductory appeals, then yes, a panel of this court should dismiss for lack of jurisdiction without ordering any briefing on the merits. Okay. Mr. Quinn, let me ask you, just assume for the sake of argument that we disagree with you and we say that this is a civil proceeding. Mr. Anomali has filed discovery requests, civil discovery requests, including requests for admission that the government did not respond to, and that seems to be forming the basis of this high amendment motion. If we disagree with you, does that mean that the whole panoply of civil discovery would be available? Are there any limits to that? And what do we do with the fact that the government has not responded to these requests for admission? Right. Absolutely not, Judge Branch. A lot of the courts that even Mr. Anomali has cited, which have held that the high amendment proceeding is civil in nature, have said there's no automatic discovery, and you don't get discovery in high amendment cases. And we understand that by, again, looking back to the text. The reply brief brought up the example of Federal Rule of Criminal Procedure 32.2, which authorized discovery in ancillary proceedings in criminal forfeiture. But that exactly proves our point, where Congress wanted there to be discovery, or the Supreme Court did, through the rules. They say it explicitly. And here, we search in vain in the height amendment, in the text of the height amendment, for any mention of automatic discovery. So a judge, for good cause, may order additional discovery. That's an open question. But certainly, they don't get to just serve requests for admission and have that be binding against the government. Mr. Anomali has failed to cite a single decision from any court of appeals allowing discovery in circumstances like that. There's no case like that, and it's contrary to statutory text. And so this court should absolutely hope that Mr. Anomali was not entitled to serve request reduction, request for admissions, or a motion for summary judgment. Now, about the admissions specifically, I want to make a couple of points. First, we don't actually concede that the government ever received those. The only evidence of that is Mr. Anomali's sworn statement in the record, and we know he was convicted of lying under oath in a bankruptcy proceeding and making false statements. So I've checked with our office. We're not sure if we got those and ignored them, or if we never received them. So that'd be something, you know, if he were entitled to would have to decide later. And second, any admissions on legal questions are not binding on the district court. The government can admit all at once that the sky is green and the grass is blue. The district court doesn't have to listen to that. So the legal admissions, even if we were required to respond and failed to do so, would not bind the district court. And Gilbert controls this decision so that no matter what the government might have said in admissions, the district court could not grant relief here. Because under this court's binding precedent, as soon as the district court agreed with us on rule 29 and denied their motion for acquittal, the defendant is effectively foreclosed from prevailing on a high amendment motion. And they simply have not shown anything like the binding precedent that is required to show you that the government's legal position was frivolous. They'd have to show that somehow the government ignored binding precedent, the district court then ignored that binding precedent. And in this court, when he wrote the first Animal Eye opinion, also failed to cite the binding precedent that they say foreclosed our position. There's a lot of persuasive authority cited in Animal Eye 1, but there's nothing binding from this court. And so I guess, I mean, I'm interested in your position on the merits, and I guess you've just touched on that. They're arguing also that Judge Batten was incorrect. And what is your position, the fact that you turned out to be wrong, the 11th Circuit said that there was no bankruptcy fraud? What is your argument? And I don't know that it's an argument so much as factual and would bring a prosecutor and say, do you really, really believe that was so? It's really just looking at cases and saying, how clear were the cases? What is your position as to whether charging him with bankruptcy fraud, given the case law was not a frivolous position and one taken in bad faith? It certainly was not a frivolous position or taken in bad faith. And that's because it was an open question in this circuit. And certainly the district court didn't see any binding precedent, and we didn't find any binding precedent that would foreclose it. That's why we brought the cases and charged it and tried it to the jury. And it was not binding. We know Animal Eye 1 is the case that answered these questions. So before then, there was nothing that foreclosed the government's position. And so the district court certainly did not abuse its case, and it found that this prosecution is not the type of prosecution that you would penalize the government for under the Hyde Amendment. There's not nearly that degree of bad faith. For that, you'd have to look to this court's decision in Atkinson, right? There, the government and the district court knew about binding precedent that squarely foreclosed the argument. And nonetheless, the government told the district court, here, you should just do what we want anyway and then let the 11th Circuit reverse it. So short of that sort of inviting error in the face of binding precedent, the Hyde Amendment does not provide any relief. And I know... I know that you didn't try the case below, but do you know when there was argument during trial and a motion for directed verdict or judgment of acquittal, do you know, was defense counsel at that point then, I assume, citing some bankruptcy case law that was saying, you know, this is not good? I assume that happened, didn't it? I'm not actually too familiar with the proceedings below. I would also assume that happened, but I'm the district judge did say that the issue was close. So I would assume there was, you know, persuasive authority on both sides. And in the end, because there was no binding authority, he found our position more meritorious and therefore... And the answer is whether they cited the same cases or not by our panel. If they didn't, then it would be hard for other people to be aware that was their position, but we'll have to look at that. That's correct, Your Honor. Yes. And I see my time has expired. So we would ask that you issue your decision before August 23rd or whenever this re-signing ends up being. And if you issue a decision after that, we ask that you affirm all the merits. Thank you. Thank you, Mr. Quinn. Ms. Webster, you have five minutes left. Sure. Well, I'll just jump into some of the questions that you asked opposing counsel about. I was interested to hear the government citing Adkinson because I think that it's actually helpful for us. So for example, the government sort of contends that because the district court agreed with the government's position and allowed the case to go forward to the jury and denied the Rule 29 motion, that Hyde Amendment motions or attorney's fees can never be appropriate because the district court agreed with them. But that's exactly what happened in Adkinson. The district court agreed with them there, allowed the case to go forward. And this court still held that the Hyde Amendment motion for attorney's fees was proper and granted and affirmed the grant of attorney's fees. So the mere fact that one judge disagrees or denies the Rule 29 motion does not foreclose the Hyde Amendment motion in any way. I think that's in conflict with this court's decision in Adkinson. And the government also repeatedly states that there was no binding precedent. There was only precedential decision. But to address Judge Carnes's question, that was a major factor that was argued during trial. And so I can't say for certain that they specifically cited the bankruptcy cases that were cited in the Anomaly decision, Anomaly 1. However, I can say with confidence that Mr. Anomaly repeatedly asked the court to vacate, to dismiss the grounds before they were even brought to trial under the sufficiency of the indictment, and then repeatedly made the same argument during trial. And so this issue was brought to everyone's attention. And the government persisted in an argument that had no merit. And so that is what this court has defined as vexatious as without reasonable or probable cause or excuse, and frivolous as defined as groundless with little prospect of success, often brought to embarrass the defendant. That's in Gilbert. And so here in the face of overwhelming precedent from other circuits, and in the overwhelming face of the bankruptcy cases that were cited by this court in the Anomaly 1 decision, the government continued to proceed down that path and to press these charges. And so... Well, let me ask you, Ms. Webster, to me, that is sort of crucial because let's say at the time of motion for judgment of acquittal, the defendant comes up with some really great arguments about bankruptcy law. Well, it's too late then, the government doesn't know, you know, maybe the district judge made a mistake, but the government's already spent its time. So what's of more interest is what happened before trial and what was filed before trial to alert the government. You're saying that there are, of course, on this record, we got all that, we don't have a briefing on that really, but there were things filed that should have alerted the government to the fact there was a problem? Yes, Your Honor, because I also did the Anomaly 1, and in that case, we also raised the sufficiency of the indictment because our argument was that the allegations in the indictment weren't sufficient to meet the bankruptcy fraud statement. And that was because that motion was filed, a motion to dismiss the indictment was repeatedly, I think more than once filed prior to trial. And I might be wrong about it being repeated prior to trial, but it was definitely filed at least once prior to trial, and made the same argument that this does not constitute bankruptcy fraud. So those arguments were well developed in the district court. It was not a surprise at the Rule 29 motion. I remember pleadings from the government making the same faulty arguments that they made on appeal to the district court. And they weren't side, they're not supported by this court's law, case law. And I want to note two, one, two things in the remaining few seconds. One is that the case, the standard for the Hyde Amendment motion is not just that it's effective or completely foreclosed by existing precedent, but there is a possibility or it allows for it allows for a Hyde Amendment motion to be granted when there's no there, the government should be on alert that there is no basis for the position that it's taking. And then, second of all, I think if you look at Anomaly decisions, it cites a number of cases from the circuit, both as to the bankruptcy fraud, and then it cites bindings that the amendment or Fifth Circuit cases. So I see that my time is up. So thank you. Let me ask you one more question too, in terms of government's reliance and case law is going to be whatever it is, but they did have a bankruptcy trustee, a person presumably well schooled in bankruptcy law, they're experts, prosecutors aren't experts in bankruptcy law. And this expert, so to speak, did testify consistently with the government's position that these funds were part of the bankruptcy estate. Does that not undercut your argument a little bit about frivolity or bad faith? I mean, the witness, I think, can say what they what they say, but the government before they bring a case is supposed to look at the law. And so they're not entitled to just rely on a witness, they need to also understand the crimes that they are charging. And the this court and the first and Anomaly one made very clear that it did not meet that the what they were saying did not meet cuts to the property of the estate as that term has been defined. So I think that there's still a solid ground for moving for the Hyde Amendment motion for fees. Thank you. Thank you, Miss Webster. Thank you both. We have your case under submission.